[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14518
_____

D.C. Docket No. 9:07-cv-80758-DTKH


ERNEST CADET,

Petitioner-Appellant,

versus

STATE OF FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 24, 2017)

ON PETITION FOR REHEARING

Before ED CARNES, Chief Judge, WILSON and FAY, Circuit Judges.

ED CARNES, Chief Judge:

Ernest Cadet has filed a petition for rehearing en banc, which also serves under our rules as a petition for rehearing before the panel. See 11th Cir. R. 35, I.O.P. 2. At least until an order granting or denying the petition for rehearing en banc is issued, a panel retains authority to modify its decision and opinion. Id. We take advantage of the opportunity to clarify our decision in order to prevent any misunderstanding of it. We grant the petition for rehearing to the panel to the extent that we vacate our previous opinion, Cadet v. Fla. Dep't of Corr., 742 F.3d 473 (11th Cir. 2014), and substitute in its place the following one.

I.

The Antiterrorism and Effective Death Penalty Act imposes a one-year statute of limitations period for filing a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitations period is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 2560 (2010). Defining the circumstances that justify equitable tolling of that limitations period is a work in progress, the significant work on it having been done in three Supreme Court decisions. See Maples v. Thomas, 565 U.S. 266, 132 S. Ct. 912 (2012); Holland, 560 U.S. 631, 130 S. Ct. 2549; Lawrence v. Florida, 549 U.S. 327, 127 S. Ct. 1079 (2007); see also Menominee Indian Tribe of Wisc. v. United States, 577 U.S. __, 136 S. Ct. 750, 755–57 (2016); Christeson v. Roper, 574 U.S. __, 135 S. Ct. 891 (2015) (discussing the Holland and Maples equitable tolling

2

requirements).  This case requires us to determine the current test for equitable tolling of the § 2244(d) statute of limitations period, which requires interpreting what the Supreme Court said about it in those decisions.

## II.

In 2000, Ernest Cadet was convicted in Florida of battery and sexual battery of the five-year-old daughter of a friend of his, crimes for which he was sentenced to life imprisonment.  His convictions were affirmed on direct appeal.  See Cadet v. State, 809 So. 2d 43 (Fla. 4th DCA 2002), cert. denied, 828 So. 2d 384 (Fla. Sept. 23, 2002).  The judgment of conviction became final 90 days later, on December 23, 2002, when the time for seeking a writ of certiorari from the United States Supreme Court expired.  See McCloud v. Hooks, 560 F.3d 1223, 1227 (11th Cir. 2009).  On that same date, Cadet's one-year statute of limitations for filing a federal habeas petition began to run.  See 28 U.S.C. § 2244(d)(1)(A).

On October 30, 2003 — 311 days after his convictions became final — Cadet filed a pro se state habeas petition, which statutorily tolled the federal limitations period until January 22, 2004, the date his state habeas proceedings came to an end.  See id. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection.").  Another 49 days of untolled time elapsed until Cadet, on March 11, 2004, filed a pro se

motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.

Before Cadet filed that motion, attorney Michael Goodman, who had represented

him on direct appeal, reviewed and edited it pro bono for Cadet.  The Rule 3.850

motion suspended the running of the federal habeas limitations period but with

only five days of the period remaining.

After the State had received more than a year's worth of extensions to

respond to Cadet's state post-conviction motion, Goodman filed a notice of

appearance in the state trial court indicating that he would be representing Cadet

during the remainder of the Rule 3.850 proceedings.  The state trial court later

denied Cadet's Rule 3.850 motion, and a Florida district court of appeal affirmed

the denial on August 9, 2006.  See Cadet v. State, 935 So. 2d 14 (Fla. 4th DCA

2006) (table decision).  That court's mandate issued on August 25, 2006, restarting

the running of the federal limitations period and giving Cadet until August 30,

2006, just five more days, to file a § 2254 petition.  See Nyland v. Moore, 216 F.3d

1264, 1267 (11th Cir. 2000) (holding that a Florida post-conviction motion remains

pending until the appellate court's mandate issues).

During the pendency of the Rule 3.850 proceedings, Goodman and Cadet

had at least five discussions about the limitations period for filing a federal habeas

petition.  In at least some of those discussions, based on what his fellow prisoners

had said to him, Cadet told Goodman that he did not think that they had "much

4

time" left to file a § 2254 petition.  In response, Goodman mistakenly and repeatedly assured Cadet that they had one year from the resolution of his state post-conviction motion to file a federal petition.  Goodman based those assurances on his own misreading of § 2244(d)(1).  Reading the statutory provision is all that Goodman did to determine how to calculate the running of the limitations period. He did not research the matter.

After the state court of appeal's decision affirming the denial of his Rule 3.850 motion but before the mandate issued, Cadet became increasingly anxious about the federal limitations period and insisted that Goodman file a § 2254 petition "right away."  Goodman reassured Cadet that he had one year from the end of his Rule 3.850 appeal to file a federal petition.  Cadet "forcefully but respectfully" disagreed with Goodman's calculation of the filing deadline, explaining that "jailhouse lawyers" had advised him that he did not have much time left to a file a § 2254 petition and repeatedly asking Goodman, "Are you sure? Are you sure?"  The jailhouse lawyers had not calculated a precise deadline for Cadet, and he believed that he had a few weeks left to file a § 2254 petition when he actually had only five days left after the mandate issued.  Again, Goodman assured Cadet that there was ample time to file a federal habeas petition, rhetorically asking him, "who are you going to believe, the real lawyer or the jailhouse lawyer?"  The majority of the conversations between Cadet and

5

Goodman about the statute of limitations period occurred before the period ran out on August 30, 2006.

Goodman eventually put his advice in writing in a letter to Cadet dated September 29, 2006, one month after the limitations period had run out. Goodman's letter, to which he attached copies of § 2244(d) and the Florida appellate court decision in Cadet's Rule 3.850 case, asserted: "As you[ ] can see you have one year after the denial of your appeal to file for Habeas relief." Cadet eventually accepted that advice because Goodman, unlike the jailhouse lawyers, was a real lawyer.

Goodman ultimately filed a § 2254 petition on Cadet's behalf on August 23, 2007. That would have been timely with two days to spare had Goodman's understanding of the statute of limitations been correct. But because his understanding was incorrect, the filing was almost a full year late; the limitations period had expired on August 30, 2006. Cadet was ordered to show cause why his federal habeas petition should not be dismissed as untimely. Goodman responded that the petition was timely because it had been filed within one year of the issuance of the mandate by the Florida appellate court in the appeal from the denial of the state post-conviction motion. The State replied that the petition was untimely and explained why. That prompted Goodman to conduct some research, realize his mistake, and feel "horrendous."

6

Now conceding the untimeliness of the § 2254 petition, Goodman argued for equitable tolling of the federal limitations period based on the fact that he had miscalculated the filing deadline and repeatedly assured Cadet that it did not begin to run until after the denial of his state post-conviction motion. Goodman was later discharged as counsel and a federal public defender was appointed to represent Cadet.

After an evidentiary hearing, a magistrate judge recommended that the district court conclude that equitable tolling applied, which would save Cadet's petition from being dismissed as untimely. The magistrate judge found that Cadet had exercised due diligence in his efforts to timely file a § 2254 petition in light of the "undisputed facts" that he "repeatedly argued with Goodman about his calculation of the deadline and [he had insisted] that the petition be filed immediately." The magistrate judge also concluded that while Goodman's initial misreading of the statute of limitations was "simple attorney error" that did not warrant equitable tolling, his failure to investigate further when confronted with Cadet's doubts and his "hollow assurances" to Cadet that his calculation was correct amounted to "constructive abandonment," an extraordinary circumstance sufficient to merit relief.

The State objected to the magistrate judge's report and recommendation, contending that Goodman had not constructively abandoned Cadet because he had

maintained regular contact with Cadet, had responded to his concerns about the filing deadline, and had not deliberately deceived him.  The district court sustained the State's objections and dismissed Cadet's § 2254 petition as time-barred.  While adopting the magistrate judge's factual findings and his legal conclusion that Cadet had exercised due diligence in pursuing his rights, the district court nevertheless determined that Goodman's conduct did not constitute an extraordinary circumstance sufficient to warrant equitable tolling because it was not "so egregious as to amount to an effective abandonment of the attorney-client relationship."  The court reasoned that "counsel's error in failing to correctly calculate the deadline for filing the habeas petition" constituted an act of negligence "during the attorney-client relationship," not a constructive abandonment of that relationship.

Cadet appealed the dismissal of his federal habeas petition, and we granted him a certificate of appealability on the sole issue of "[w]hether the district court improperly determined that [his] 28 U.S.C. § 2254 habeas petition was time-barred, based on its finding that he was not entitled to equitable tolling."

III.

We review a district court's factual findings only for clear error, but that does not matter here because there are no disputed facts.  We review de novo the court's application of equitable tolling law to the facts.  See Steed v. Head, 219

8

F.3d 1298, 1300 (11th Cir. 2000).  In doing so, we keep in mind that equitable tolling is an extraordinary remedy "limited to rare and exceptional circumstances and typically applied sparingly."  Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (quotation marks omitted).  To warrant that extraordinary remedy, a petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland, 560 U.S. at 649, 130 S. Ct. at 2562 (quotation marks omitted).

The State does not contest the district court's determination that Cadet diligently pursued his rights, given his repeated questioning of counsel's calculation of the § 2254 deadline and his insistence that the petition be timely filed.  We do not question that determination either.  See id. at 653, 130 S. Ct. at 2565 ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.") (citations and quotation marks omitted); Downs v. McNeil, 520 F.3d 1311, 1323 (11th Cir. 2008) (concluding that petitioner's allegations, if true, showed that he had exercised reasonable diligence by writing multiple letters to counsel "to express concern over the running of the AEDPA filing period and to urge the filing of his federal habeas petition").  The dispositive question, then, is whether Goodman's actions in failing to timely file a § 2254 petition constitute an "extraordinary circumstance" for purposes of equitable tolling.  To answer that question, we must first address the appropriate

9

standard for gauging when attorney error amounts to an extraordinary

circumstance.  There are three Supreme Court decisions addressing that standard.

### A.

The first decision, Lawrence, squarely holds that an attorney's mistake in

calculating the statute of limitations period, even when caused by the failure to do

rudimentary legal research, does not justify equitable tolling.  Lawrence, 549 U.S.

at 336–37, 127 S. Ct. at 1085.  The attorney's blunder in that case was based on his

uninformed belief that the limitations period was statutorily tolled under 28 U.S.C.

§ 2244(d)(2) during the pendency in the Supreme Court of a certiorari petition to

review the state courts' denial of state collateral relief.  See id.  The attorney

obviously did not do even rudimentary legal research (such as a Westlaw search of

circuit decisions discussing the statutory tolling provision); if he had, he could

have learned with less than five minutes of effort that "[t]hen-applicable Eleventh

Circuit precedent foreclosed any argument that § 2244's statute of limitations was

tolled by the pendency of a petition for certiorari seeking review of a state

postconviction proceeding."  See id. at 331, 127 S. Ct. at 1082; see also Coates v.

Byrd, 211 F.3d 1225, 1227 (11th Cir. 2000).  Not only that, but with a few minutes

more research the attorney could have also discovered that "every other Circuit to

address the issue agreed that the limitations period was not tolled by certiorari

petitions."  Lawrence, 549 U.S. at 336, 127 S. Ct. at 1085.  Because the attorney

10

did not perform any legal research, he was ignorant of what the Court characterized as "[t]he settled state of the law at the relevant time," id., and missed the filing deadline.

The Supreme Court explained that if credited, Lawrence's argument that his attorney's mistake in miscalculating the limitations period entitled him to equitable tolling "would essentially equitably toll limitations periods for every person whose attorney missed a deadline." Id. Recognizing that would never do, the Court unequivocally held that: "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Id. at 336–37, 127 S. Ct. at 1085. In the decade since the Lawrence decision was issued, that holding has never been questioned. It has, instead, been reiterated by the Supreme Court. See Menominee Indian Tribe, 136 S. Ct. at 757 (citing Lawrence for the proposition that "a simple 'miscalculation' that leads a lawyer to miss a filing deadline" does not justify equitable tolling) (quotation marks omitted); Holland, 560 U.S. at 651–52, 130 S. Ct. at 2564 (same); see also Maples, 565 U.S. at 282, 132 S. Ct. at 923 ("[A]n attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit."); cf. id. at 280–81, 132 S. Ct. at 922 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause' [for excusing a procedural default relating to a filing

11

deadline]. . . . because the attorney is the prisoner's agent, and under well-settled principles of agency law, the principal bears the risk of negligent conduct on the part of his agent.") (citation and quotation marks omitted); Coleman v. Thompson, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566–67 (1991) ("Attorney ignorance or inadvertence is not 'cause' [for excusing a procedural default relating to a filing deadline] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error.") (quotation marks omitted).

## B.

The second Supreme Court decision addressing the standard for equitable tolling of the § 2244(d) statute of limitations, Holland v. Florida, rejected as "too rigid" this circuit's rule that even attorney conduct that is "grossly negligent" cannot justify equitable tolling of AEDPA's limitations period absent proof of "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part."  560 U.S. at 649, 130 S. Ct. at 2562–63 (quoting Holland v. Florida, 539 F.3d 1334, 1339 (11th Cir. 2008)).  The Court acknowledged that, under its own precedent, a petitioner ordinarily "must bear the risk of attorney error" and that a "garden variety claim of attorney negligence," such as a "simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Id. at 650–52, 130 S. Ct. at 2563–64 (citation and quotation marks omitted).  It

12

nevertheless held that, "at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." Id. at 651, 130 S. Ct. at 2563 (emphasis added).

The Supreme Court implied, but did not definitively hold, that counsel's conduct in the Holland case may have constituted an extraordinary circumstance because it involved "far more than 'garden variety' or 'excusable neglect.'" Id. at 652, 130 S. Ct. at 2564.  The Court explained that, while counsel's failure to timely file a § 2254 petition and apparent ignorance of the correct filing deadline "suggest[ed] simple negligence," there were four facts in Holland's case that might lead to the conclusion that counsel's conduct "amounted to more" than negligence: (1) counsel's failure to file the petition on time "despite Holland's many letters that repeatedly emphasized the importance of his doing so"; (2) counsel's failure to "do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules"; (3) counsel's failure to inform Holland that the Florida Supreme Court had affirmed the denial of his state post-conviction motion, "again despite Holland's many pleas for that information"; and (4) counsel's failure to communicate with Holland during the two-and-a-half year period in which his state motion was pending before the Florida Supreme Court, "despite various pleas from Holland that [counsel] respond to his letters."

13

Id. at 652, 130 S. Ct. at 2564; see also id. at 636–38, 130 S. Ct. at 2555–56. The first one of those four factors is present in this case and the second one arguably is,[1] but the last two factors are not.

And there was another critical fact in Holland that is not present in this case. During his state post-conviction proceedings, Holland had unsuccessfully sought to discharge his attorney, complaining to the Florida Supreme Court that there had been "a complete breakdown in communication," that counsel had "not kept him updated on the status of his capital case," and that counsel had "abandoned" him. Id. at 637, 130 S. Ct. at 2555 (quotation marks and alterations omitted). The state supreme court had denied Holland's attempts to get rid of his attorney. See id. at 637, 130 S. Ct. at 2556. Even with all of that, including the "serious instances of attorney misconduct," the United States Supreme Court declined to state its "conclusion in absolute form," and remanded for a determination of whether the circumstances involved in that case "indeed constitute extraordinary circumstances sufficient to warrant equitable relief." Id. at 652–54, 130 S. Ct. at 2564–65. The holding of the Holland decision is that attorney misconduct sufficiently egregious and extraordinary to justify equitable tolling is not limited to "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part."

---

[1] Although he repeatedly expressed his concern to Goodman that there was less time left than Goodman thought, Cadet never "went so far as to identify the applicable legal rules," Holland, 560 U.S. at 652, 130 S. Ct. at 2564, to Goodman.

14

Id. at 649, 130 S. Ct. at 2562–63.  The Court did not hold that an attorney's gross negligence alone would justify tolling or even whether the facts in that case, which went beyond gross negligence, entitled Holland to equitable holding.  See id. at 654, 130 S. Ct. at 2565 ("[W]e leave it to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent [the State] should prevail.").

In his concurring opinion in Holland, which set the template for the Supreme Court's later decision in Maples, Justice Alito agreed with the majority that Holland had alleged "certain facts that go well beyond any form of attorney negligence" and that the standard we had applied in the case was too limited, but he criticized the majority opinion because it "does not do enough to explain the right standard" for determining when attorney misconduct rises to the level of an extraordinary circumstance.  Id. at 654–55, 130 S. Ct. at 2566 (Alito, J., concurring).

Justice Alito set out his views about the right standard for attorney error and misconduct tolling issues.  He pointed out that earlier decisions, in particular Lawrence, "make it abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling."  Id. at 655–56, 130 S. Ct. at 2566 (citing Lawrence, 549 U.S. at 336, 127 S. Ct. at 1085).  As we have

15

explained, that decision held that attorney miscalculation of a filing deadline "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Id. at 655–56, 130 S. Ct. at 2566 (quoting Lawrence, 549 U.S. at 336–37, 127 S. Ct. at 1085) (emphasis omitted). Justice Alito explained that any distinction between ordinary and gross negligence would be "impractical," "highly artificial," and "hard to administer." Id. at 658, 130 S. Ct. at 2567. Instead, the relevant distinction should be between all forms of attorney negligence, "however styled," which would be "constructively attributable to the client," and "attorney misconduct that is not constructively attributable to the petitioner" because counsel had "essentially abandoned" the client. Id. at 657, 659, 130 S. Ct. at 2567–68 (quotation marks omitted). In his view, the petitioner in Holland might be entitled to equitable tolling, not because his attorney had acted with gross negligence, but because counsel had effectively abandoned him, "as evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." Id. at 659, 130 S. Ct. at 2568. "Common sense," Justice Alito concluded, "dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." Id.

16

C.

Two years later in Maples v. Thomas, the Supreme Court revisited the question of when attorney misconduct might rise to the level of "extraordinary circumstances beyond [a petitioner's] control," albeit in the context of what it takes to establish cause to excuse a state procedural bar to federal habeas relief. 565 U.S. at 283, 132 S. Ct. at 924 (quotation marks omitted). The petitioner in Maples was an Alabama death-row inmate who had been represented in post-conviction proceedings by two pro bono attorneys from a New York law firm and a local attorney recruited for the sole purpose of allowing the out-of-state attorneys to be admitted pro hac vice. Id. at 274–75, 132 S. Ct. at 918–19. While Maples' state post-conviction petition was pending, the two New York attorneys left their firm for positions that made them ineligible to continue to represent him. Id. at 275, 283–84, 132 S. Ct. at 919, 924. Neither attorney notified Maples of their departure and resulting inability to represent him. Id. at 275, 132 S. Ct. at 919. And neither of them asked the state trial court for leave to withdraw or moved for substitution of counsel. See id. They absconded from the case and deserted their client. Without the assistance of his listed attorneys of record, Maples did not receive timely notice of the denial of his state post-conviction petition and, as a result, failed to timely appeal that ruling, which led to the procedural default of his claims in federal court. Id. at 275–79, 132 S. Ct. at 919–21.

17

In its discussion in <u>Maples</u>, the Supreme Court reaffirmed the general rule that, "under well-settled principles of agency law," a petitioner "bears the risk of negligent conduct on the part of his [attorney]" and, for that reason, is ordinarily bound by counsel's failure to meet a filing deadline. <u>Id.</u> at 280–81, 132 S. Ct. at 922 (quotation marks omitted). The Court held, however, that "[a] markedly different situation is presented . . . when an attorney abandons his client without notice" and thereby "sever[s] the principal-agent relationship," at which point counsel's "acts or omissions . . . cannot fairly be attributed to [the client]." <u>Id.</u> at 281, 132 S. Ct. at 922–23 (quotation marks omitted) (final alteration in original).

The <u>Maples</u> Court agreed with, and adopted, Justice Alito's view that "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him," and emphasized that Justice Alito's <u>Holland</u> concurrence had "homed in on the <u>essential difference</u> between a claim of <u>attorney error, however egregious</u>, and a claim that an attorney had essentially abandoned his client." <u>Id.</u> at 282–83, 132 S. Ct. at 923–24 (emphasis added). Underscoring that "essential difference," the Court also clarified that its <u>Holland</u> decision had turned on counsel's "abandonment" of his client, instead of on counsel's egregious errors, and it held that there was "no reason . . . why <u>the distinction between attorney negligence and attorney abandonment</u> should not hold in both" the

18

equitable tolling and procedural default contexts. <u>Id.</u> at 282 & n.7, 132 S. Ct. at 923 & n.7 (emphasis added).

Having laid down the doctrinal framework for determining when attorney error is not constructively attributable to a petitioner, the Supreme Court then analyzed "whether Maples ha[d] shown that his attorneys of record abandoned him, thereby supplying the 'extraordinary circumstances beyond his control' necessary to lift the state procedural bar to his federal petition." <u>Id.</u> at 283, 132 S. Ct. at 924 (citation omitted); <u>see also</u> <u>Menominee Indian Tribe</u>, 136 S. Ct. at 756 ("We therefore reaffirm that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary <u>and</u> beyond [the litigant's] control.") (footnote omitted). The Court concluded that counsel had abandoned Maples because, as a matter of both common sense and agency law principles, he was effectively "left without any functioning attorney of record" and "had been reduced to <u>pro</u> <u>se</u> status." <u>Maples</u>, 565 U.S. at 288–89, 132 S. Ct. at 927.

### D.

Cadet's circumstances are different. He did act with reasonable diligence, but the reasonable diligence and extraordinary circumstance requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling. <u>Menominee Indian Tribe</u>, 136 S. Ct. at 756, 757

19

n.5. We assume for present purposes that attorney Goodman's sincere but persistent misreading of § 2244(d) after his client expressed doubt amounted to gross negligence. The resulting question is whether attorney error that amounts to gross negligence standing alone is a sufficiently extraordinary circumstance for equitable tolling purposes, or whether the attorney's negligent error must amount to or be accompanied by some other factor such as, to name one example, abandonment of the attorney-client relationship.

Even though the Supreme Court in <u>Holland</u> expressly declined to decide whether Holland himself was entitled to equitable tolling, 560 U.S. at 653–54, 130 S. Ct. at 2565, and that case involved more than attorney negligence of any degree, <u>see</u> <u>id.</u> at 651–52, 130 S. Ct. at 2564, the dissent in this case reads the majority opinion in <u>Holland</u> to mean that an attorney's gross negligence alone may warrant equitable tolling. <u>See</u> Dissenting Opn. at 50–53, 63. In the <u>Holland</u> opinion itself, however, the Court pointed out that the attorney had essentially abandoned Holland. <u>See, e.g.</u>, 560 U.S. at 637–38, 130 S. Ct. at 2555–56 (noting the attorney's failure to inform Holland of the Florida Supreme Court's decision "despite Holland's many pleas for that information" and the attorney's failure to communicate with him during the two-and-a-half year period in which his state motion was pending in the Florida Supreme Court); <u>see also id.</u> at 635–38, 130 S. Ct. at 2554–56 (describing those facts).

20

In any event, the <u>Holland</u> opinion cannot be read by itself.  It must be read in light of the Court's explanation of <u>Holland</u> eighteen months later in its <u>Maples</u> decision.  While <u>Maples</u> involved the issue of cause to excuse procedural default instead of equitable tolling, the Court concluded that the difference does not matter, that the key distinction between attorney negligence and attorney applies in both contexts.  <u>See</u> <u>Maples</u>, 565 U.S. at 282 n.7, 132 S. Ct. at 923 n.7 ("We see no reason, however, why the distinction between attorney negligence and attorney abandonment should not hold in both contexts.").

The Court pointed out in <u>Maples</u> that the petitioner in <u>Holland</u> had "urged that attorney negligence was not the gravamen of his complaint."  <u>Maples</u>, 565 U.S. at 282, 132 S. Ct. at 923.  Abandonment was.  <u>Id.</u>  As the Court noted, Holland had "asserted that his lawyer had detached himself from any trust relationship with [him] . . . [and had] abandoned [him] . . . ."  <u>Id.</u> (quotation marks omitted).  The <u>Maples</u> Court thereby characterized <u>Holland</u> as a case of attorney abandonment, not one of gross negligence, emphasizing that it had involved "counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years."  <u>Id.</u> (quoting <u>Holland</u>, 560 U.S. at 659, 130 S. Ct. at 2568 (Alito, J., concurring)).

In the course of explaining its <u>Holland</u> decision, the <u>Maples</u> Court reached back to Justice Alito's concurring opinion in <u>Holland</u>, and adopted his distinction

21

because the Court was convinced that he had "homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." Id.  The Maples Court meant what it said about the essential difference between egregious attorney error and the abandonment that had occurred in Maples.  "Essential difference" means "essential difference."  And the phrase "attorney error, however egregious" means attorney error however egregious an error it is, which encapsulates Justice Alito's position that gross error or gross negligence alone is not a basis for equitable tolling.  We follow Justice Kagan's advice:  "[A] good rule of thumb for reading [Supreme Court] decisions is that what they say and what they mean are one and the same." Mathis v. United States, 579 U.S. __, 136 S. Ct. 2243, 2254 (2016).  What the Maples decision says is that Justice Alito got it right in Holland, that "attorney error, however egregious," is not enough for equitable tolling.

The dissent accuses us of using Maples in an attempt to overrule Holland's holding that gross negligence alone may be an extraordinary circumstance warranting equitable tolling.  Dissenting Opn. at 53–55.  Of course, only the Supreme Court can overrule its own decisions.  See, e.g., Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1263 (11th Cir. 2012).  But as we have already explained, Holland did not hold what the dissent thinks it held.  The Holland decision held only that professional misconduct could amount to an extraordinary

22

circumstance, and that Holland's attorney's misconduct, which extended beyond negligence, may or may not have risen to that level. 560 U.S. at 651–52, 130 S. Ct. at 2563–65; see also id. at 654, 130 S. Ct. at 2565. In Maples the Court construed and clarified its earlier Holland decision, explaining that while a petitioner is bound by his attorney's negligent mistakes, he is not bound by the actions or inactions of an attorney occurring after the attorney has severed the principle-agent relationship by abandoning his client. Maples, 565 U.S. at 280–81, 132 S. Ct. at 922–23. Nothing in Holland, especially as it was clarified in Maples, is inconsistent with our holding that attorney negligence, even gross or egregious negligence, does not by itself qualify as an "extraordinary circumstance" for purposes of equitable tolling; either abandonment of the attorney-client relationship, such as may have occurred in Holland, or some other professional misconduct or some other extraordinary circumstance is required.[2]

### E.

The dissent argues that by not adopting a gross negligence standard, we run afoul of Holland's rejection of mechanical, per se rules in the equitable tolling

---

[2] In an attempt to make our holding appear to be a mechanical rule, the dissenting opinion quotes the first part of this sentence but leaves out the most important part, which comes after the semi-colon. Dissenting Opn. at 52. That is the part where we make clear that abandonment, or some other professional misconduct, or some other extraordinary circumstance can be sufficient for equitable tolling. The dissenting opinion also fails to mention, much less deal with, our clear statement that in addition to all of the bases for equitable tolling in the pre-Holland list there are more, some of which will have to be identified as cases arise, but we know that abandonment is not the only instance of it. See Part III.H of this opinion, below.

23

context. Dissenting Opn. at 51–52; see Holland, 560 U.S. at 649–51, 130 S. Ct. at 2563 (explaining that equity demands "flexibility" and the avoidance of "mechanical" and "rigid rules") (quotation marks omitted). But given the range of extraordinary circumstances that we recognize could justify equitable tolling, our holding does not put in place a rigid or mechanical rule.

And the dissent's argument overlooks the fact that the Supreme Court itself has repeatedly blessed what, under the dissent's view, would be a rigid or mechanical per se rule. In Holland itself the Court reaffirmed its own "rigid" or "mechanical" rule that simple or garden variety negligence alone can never warrant equitable tolling. See 560 U.S. at 651–52, 130 S. Ct. at 2564; Maples, 565 U.S. at 282, 132 S. Ct. at 923 ("[T]he [Holland] Court recognized that an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit."); see also Menominee Indian Tribe, 136 S. Ct. at 755 (rejecting the argument that, because two distinct elements must be satisfied, the equitable tolling test is "overly rigid"). Our holding that gross negligence alone is not enough is no more mechanical, rigid, or per se than the Supreme Court's often reiterated rule that simple negligence alone is never enough, a rule that the dissent's "no rule" approach would not permit. One might even say that it is the dissent, with its rigid or mechanical rule position, that is attempting to overrule Supreme Court precedent.

24

And contrary to our colleague's suggestion, nothing in our opinion forecloses courts from engaging in "equitable, case-by-case" inquiries into whether abandonment or any other extraordinary circumstance occurred, provided, of course, that negligence or gross negligence is not treated as a sufficient extraordinary circumstance all by itself.  But the inquiry should not be a standardless, by-the-seat-of-the-pants, length-of-the-chancellor's-foot, purely discretionary decision.  We are guided in this respect by the Holland Court's statement that "given the long history of judicial application of equitable tolling, courts can easily find precedents that can guide their judgments."  Holland, 560 U.S. at 651, 136 S. Ct. at 2563.  The Court cited five federal courts of appeals' decisions as examples.  Id. at 651, 136 S. Ct. at 2564.  This does not mean that equitable tolling depends on the existence of a precedent with facts closely on point, but it does mean that some extraordinary circumstance, professional misconduct or otherwise, should be objectively identified.  The standard is not purely subjective.  See generally Missouri v. Jenkins, 515 U.S. 70, 127, 115 S. Ct. 2038, 2068 (1995) (Thomas, J., concurring) ("Blackstone emphasized that courts of equity must be governed by rules and precedents no less than the courts of law. '[I]f a court of equity were still at sea, and floated upon the occasional opinion which the judge who happened to preside might entertain of conscience in every particular case, the inconvenience that would arise from this uncertainty, would be

25

a worse evil than any hardship that could follow from rules too strict and inflexible.'") (quoting 3 William Blackstone, <u>Commentaries on the Laws of England</u> 436, 440 (1768)).

Applying the correct standard to this case in light of the bases for tolling that Cadet has argued to us, our inquiry is whether Cadet in addition to showing negligence "has shown that his attorney[ ] . . . abandoned him, thereby supplying the 'extraordinary circumstances beyond his control'" necessary to warrant equitable tolling of the § 2244(d) statute of limitations period.  <u>See</u> <u>Maples</u>, 565 U.S. at 283, 132 S. Ct. at 924 (quoting <u>Holland</u>, 560 U.S. at 659, 136 S. Ct. at 2568 (Alito, J., concurring)).  Abandonment is not the only professional misconduct or other extraordinary circumstance that will suffice for equitable tolling, but it is the only one besides negligence that Cadet has argued.[3]

F.

Cadet contends that in addition to being negligent attorney Goodman effectively abandoned him, thereby severing the attorney-client relationship, by

---

[3] The dissent disagrees with our statement that Cadet stakes his case for equitable tolling solely on his contention that that his attorney was negligent and abandoned him. It insists instead that Cadet "frames the issue on appeal broadly."  Dissenting Opn. at 61.  But he doesn't.  The single sentence that the dissent snips from Cadet's 33-page brief asserts nothing more than gross negligence or abandonment or a combination of the two.  <u>See</u> <u>Holland</u>, 560 U.S. at 657, 130 S. Ct. at 2567 (Alito, J., concurring) (explaining that in addition to miscalculating the filing deadline, "forget[ing] to file the habeas petition on time, mail[ing] the petition to the wrong address, or fail[ing] to do the requisite research to determine the applicable deadline" are all "forms of attorney negligence" constructively attributable to the client).  The rest of Cadet's brief makes clear that his argument is that Goodman's conduct amounted to more than simple negligence and was either gross negligence or abandonment.

26

failing to follow Cadet's instructions to file a § 2254 petition on time, by reassuring Cadet that Goodman's understanding of the federal filing deadline was correct and that of the "jailhouse lawyers" was incorrect, and by not conducting any legal research to determine the proper filing date after Cadet expressed doubts. Cadet argues that, under agency law principles, counsel effectively abandons his client and severs the attorney-client relationship when he acts in a manner that harms his client's interests. As the Supreme Court's discussion in Maples shows, agency law does provide the principles that govern a client's accountability for his attorney's errors, but Cadet misstates those principles.[4]

Under fundamental principles of agency law, the agency relationship between an attorney and his client can be severed, with the result that the client is not constructively charged with his attorney's knowledge or actions when, for example, the attorney actually abandons his client or purposely acts adversely to his client's interests or commits another serious breach of loyalty to his client. See Downs, 520 F.3d at 1320 ("[U]nder fundamental tenets of agency law, a principal

---

[4] The dissent criticizes us for "relying, to an unjustified extent, on agency law." Dissenting Opn. at 59. That criticism is remarkable for two reasons. First, both Cadet and the dissent rely on agency law in support of their positions. Second, and more importantly, the Supreme Court explained in Maples that the critical distinction between attorney negligence, including egregious attorney error, and attorney abandonment is grounded in "well-settled principles of agency law." 565 U.S. at 280–81, 132 S. Ct. at 922–23. Under those principles a petitioner bears the risk of attorney error unless his attorney has essentially abandoned him or engaged in other misconduct that thereby "severed the principal-agent relationship." Id. We make no apology for answering the agency law arguments of Cadet and the dissent, or for relying on "well-settled principles of agency law," as the Supreme Court did in its Maples decision.

27

is not charged with an agent's actions or knowledge when the agent is acting adversely to the principal's interests."); Restatement (Second) of Agency § 112 (1958) ("[T]he authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal."); Restatement (Third) of Agency § 5.04 (2006) ("[N]otice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter . . . ."). The adverse interest exception to the general rule of agency, however, is not nearly as broad as Cadet would like it to be.

An agent is not deemed to have acted adversely to his principal's interests simply because he blundered and made an unwise, negligent, or grossly negligent mistake that harmed those interests. Instead, an agent is deemed to have acted adversely to his principal's interests only when he acts, or fails to act, for the purpose of advancing his own interests or those of a third party. The Restatements (both Second and Third) of Agency make that clear. The Third Restatement provides that a principal is not charged with his agent's knowledge "if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person." Restatement (Third) of Agency § 5.04 (emphasis added). It also provides: "[T]he fact that an action taken by an agent has unfavorable results for the principal does not establish that the

28

agent acted adversely." Id., cmt. c.  The Second Restatement similarly provides: "A principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another's purposes . . . ."  Restatement (Second) of Agency § 282 (emphasis added).  As the First Circuit has explained:  "'Adverse interest' in the context of imputation means that the [agent] is motivated by a desire to serve himself or a third party, and not the [principal], the classic example being looting."  Baena v. KPMG LLP, 453 F.3d 1, 8 (1st Cir. 2006) (emphasis added).

The Supreme Court recognized exactly that in Maples, relying on "[h]ornbook agency law" and citing the Restatement for the proposition that: "[T]he authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal."  565 U.S. at 284, 132 S. Ct. at 924 (quotation marks omitted) (alterations in original) (emphasis added); see also id. (quoting favorably the commentary to the Restatement that explains "the agent commits a breach of duty [of loyalty] to his principal by acting for another in an undertaking which has a substantial tendency to cause him to disregard his duty to serve his principal with only his principal's purposes in mind.") (quotation marks and first alteration omitted) (emphasis added).

29

The limitation on the adverse interest exception that the Supreme Court recognized in Maples was applied by the Ninth Circuit in its Towery decision. See Towery v. Ryan, 673 F.3d 933, 941–44 (9th Cir. 2012). Attempting to avoid the bar on second and successive petitions, the death-sentenced habeas petitioner in that case argued that there should be an equitable exception to that bar when counsel in the first habeas proceeding had failed to raise a colorable claim and thereby abandoned his client or breached his duty of loyalty, severing the agency relationship. Id. at 936, 940–41. Putting aside the question of whether the second or successive petition bar could be equitably lifted, the Ninth Circuit held that failing to raise a colorable claim did not amount to abandonment or to a breach of the duty of loyalty that severed the agency relationship and prevented the client from being bound by the attorney's actions or inactions. Id. at 941–44. The court acknowledged that "[v]iolating the duty of loyalty, or failing to disclose adverse interests, voids the agency relationship," id. at 942 (quotation marks omitted), but it also recognized that attorney error alone does not breach the duty of loyalty; the attorney must instead have permitted another interest or consideration to interfere with his loyalty to the petitioner, id. As the Ninth Circuit put it: "Towery also has presented no authority for the proposition that counsel's failure to raise a colorable habeas claim amounts to a serious breach of the duty of loyalty that severs the attorney-client agency relationship. We are not aware of any such authority." Id.

30

(emphasis added).  Likewise, Cadet has presented no authority for the proposition that his counsel's negligent failure to file the habeas petition on time amounts to a breach of loyalty that severs the attorney-client agency relationship.

The reasoning behind the adverse interest exception is that "where an agent, though ostensibly acting in the business of the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it." Wight v. BankAmerica Corp., 219 F.3d 79, 87 (2d Cir. 2000) (quotation marks omitted).  Courts have recognized that the adverse interest exception is a narrow one, which applies only where an agent wholly disregards the principal's interests in favor of his own interests or the interests of a third party.  See id. ("The adverse interest exception, however, is narrow and applies only when the agent has totally abandoned the principal's interests.") (quotation marks omitted); Beck v. Deloitte & Touche, 144 F.3d 732, 736 (11th Cir. 1998) (explaining that, under Florida law, an agent's actions must be "entirely adverse" to the principal's interests, meaning that "his actions must neither be intended to benefit the [principal] nor actually cause short- or long-term benefit to the [principal]").[5]

---

[5] The dissent argues for a lazy lawyer expansion of the adverse interest exception, contending that Goodman gained some "monetary or other benefit" because he "was able to retain Cadet as a client by advising Cadet without any research and by constantly reassuring Cadet that Goodman possessed superior knowledge." Dissenting Opn. at 67.  No precedent at all exists to support a lazy lawyer exception, which would be alien to agency law.  And, of course,

31

It has to be so.  If, as Cadet argues, a principal were not held accountable for his agent's actions or inactions unless they benefited the principal, the mistakes, oversights, or negligence of even the most loyal and devoted agent would never be charged against the principal.  If Cadet's view were adopted, principals would have an iron clad guarantee against any loss from their agent's actions or inactions.  That is not how the legal regime of agency operates.  There is no upside-only slant to it.  If there were — if Cadet's position prevailed — instead of there being a narrow adverse interest exception, there would be a broad adverse impact exception that would eviscerate the rule that the principal is responsible for the

---

since every failure to act could be excused on grounds that it relieved the agent of the burden of acting or carrying out some task, the dissent's position would be utterly unworkable and would discourage anyone from dealing with principals through their agents.  It would also contradict the result in the Lawrence case where the Supreme Court rejected equitable tolling even though the petitioner's attorney obviously had avoided the burden of doing any legal research to check his erroneous belief about whether a certiorari petition statutorily tolled the time for filing a federal habeas petition while maintaining Lawrence as his client.  See 549 U.S. at 336–37, 127 S. Ct. at 1085.

Instead of providing support for its proposed lazy lawyer exception, the dissent states that the cases we rely on "appear to assume . . . that an attorney receives monetary or other benefit either by retaining the client at issue or by gaining other clients."  Dissenting Opn. at 67.  The dissent confuses abandonment with a breach of the duty of loyalty.  But as the Ninth Circuit has recognized, those are two different ways in which the agency relationship between attorney and client can be severed.  Towery, 673 F.3d at 941–42.

The dissent says that Goodman "repeatedly reassured Cadet that months remained in the limitations period" and "discouraged Cadet from seeking advice from others."  Dissenting Opn. at 53.  While Goodman did express his sincere belief that he was right and rhetorically asked Cadet "who are you going to believe, the real lawyer or the jailhouse lawyer?," he didn't tell Cadet not to independently research the issue or seek advice from another attorney.  Nor is there any indication that Cadet ever contemplated doing so.

32

actions of his agent.  Agency law would be turned upside down, and no one would

be willing to deal with a principal through his agent.[6]

The dissent puts an ABA Model Rules of Professional Conduct spin on

Cadet's adverse interest argument.  Dissenting Opn. at 68–70.  The dissent would

have us lower the bar for equitable tolling to the ground by providing that an

attorney's failure to comply with the ABA Model Rules breaches the duty of

loyalty to his petitioner-client and thereby frees the petitioner from any mistakes

the attorney has made.  Profound problems plague that position.

---

[6] In response to our discussion of agency law and of the limited nature of the adverse interest exception, the dissent argues that none of that law and those principles matter unless we can point to a decision applying them to attorneys and their clients.  It says that:  "[T]he Majority resorts to sources that speak to general principles of agency law rather than those discussing an attorney's relationship with his client."  Dissenting Opn. at 66.  The dissent is mistaken.  We have already pointed out that the Supreme Court itself has held that agency law governs the accountability of a client, including a criminal defendant or habeas petitioner, for the actions or inactions of his attorney.  See Holland, 560 U.S. at 656, 130 S. Ct. at 2566–67 ("Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'") (quoting Coleman, 501 U.S. at 753, 111 S. Ct. at 2566–67) (emphasis added) (quotation marks omitted).  Holland and Coleman are habeas cases, as is Towery, the Ninth Circuit case we have discussed.  See also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 91, 111 S. Ct. 453, 456 (1990) ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent . . . .") (quotation marks omitted).

We have also pointed out that the Supreme Court recognized in Maples, another federal habeas case, that the adverse interest exception to client accountability for the actions and inactions of the attorney applies when "without knowledge of the principal, [the attorney] acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal," and "[t]he agent commits a breach of duty [of loyalty] to his principal by acting for another in an undertaking which has a substantial tendency to cause him to disregard his duty to serve his principal with only his principal's purposes in mind."  565 U.S. at 284, 132 S. Ct. at 924 (emphasis added) (last alteration in original).

The ABA Rules require an attorney to bring to bear in representing a client "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," Model Rules of Prof'l Conduct r. 1.1 (Am. Bar Ass'n 2016), and to actually "employ[] the requisite knowledge and skill in a particular matter," id. r. 1.1. cmt. 1.  They require an attorney to always "act with reasonable diligence and promptness in representing a client." Id. r. 1.3.  That means every lawyer must always "take whatever lawful and ethical measures are required to vindicate a client's cause," and "must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Id. r. 1.3 cmt. 1.  An attorney who is guilty of negligence, even simple negligence, in ascertaining and calculating a filing deadline and thereby causes his client's action to be barred is not bringing to bear the necessary knowledge, skill, and thoroughness, and is not zealously representing his client, as ABA Rules 1.1 and 1.3 require.  That attorney has clearly violated the ABA rules.

Yet we know, because the Supreme Court has held, that the fact that an attorney missed a filing deadline because he failed to do even rudimentary research, is a type of "miscalculation [that] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence, 549 U.S. at 336–37, 127 S. Ct. at 1085; accord Holland, 560 U.S. at 651–52, 130 S. Ct. at 2564 ("We have

34

previously held that a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.") (citations and quotation marks omitted); see also id. at 652, 130 S. Ct. at 2564 (noting that an attorney's failure to file a timely habeas petition and ignorance of the correct filing deadline "suggest simple negligence"). The Supreme Court made clear in Maples that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'" to relieve the prisoner from the effects of that negligence. Maples, 565 U.S. at 280, 132 S. Ct. at 922. The reason it does not, the Court explained, is "because the attorney is the prisoner's agent, and under well-settled principles of agency law, the principal bears the risk of negligent conduct on the part of his agent." Id. at 280–81, 132 S. Ct. at 922 (quotation marks omitted). As a result, "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight." Id. at 281, 132 S. Ct. at 922.

The dissent's theory is that for statute of limitations and equitable tolling purposes a litigant is not bound by his attorney's oversights, mistakes, and negligence because such shortcomings violate the attorney's mandatory duty under the ABA Rules to render competent, thorough, and zealous representation. That theory is impossible to reconcile with the holding and result in the Lawrence case. If the attorney in that case had bothered to do any research about statutory tolling

under § 2244(d), he would have quickly discovered that his belief was foreclosed by controlling circuit precedent and was contrary to the decision of every other circuit that had addressed the issue. Lawrence, 549 U.S. at 336, 127 S. Ct. at 1085. If the dissent were correct, the Court would not have rejected the petitioner's claim for equitable tolling in Lawrence. Yet it did, concluding that the petitioner was bound by his attorney's mistaken inaction. Id. at 337, 127 S. Ct. at 1086.

And that is true even where an attorney's mistakes are egregious enough to be characterized as "gross negligence." United States v. 7108 W. Grand Ave., 15 F.3d 632, 634 (7th Cir. 1994) ("[W]hy should the label 'gross' make a difference to the underlying principle: that the errors and misconduct of an agent redound to the detriment of the principal (and ultimately, through malpractice litigation, of the agent himself) rather than of the adversary in litigation?"); cf. id. ("No lawyer would dream of arguing on behalf of a hospital that, although the hospital is liable in tort for staff physicians' negligence and intentional misconduct, it is not liable for their 'gross negligence.' The argument makes no more sense when presented on behalf of a lawyer or litigant.").

Attorney Goodman's misinterpretation of the filing deadline and his failure to conduct any research into the matter, particularly when faced with Cadet's persistent challenges to his calculation, was certainly negligent and, we assume, grossly so. A careful reading of § 2244(d) should have dispelled his mistaken

36

belief that the limitations period did not begin to run until after the conclusion of Cadet's Rule 3.850 proceedings. See 28 U.S.C. § 2244(d)(1)(A) & (d)(2). But the fact that Goodman ought to have known better or ought to have done the necessary research to know better does not mean that he was "acting adversely" to Cadet's interests as that phrase is used in agency law. Cf. Holland, 560 U.S. at 651–52, 130 S. Ct. at 2564 (stating that a negligent "'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling") (citation omitted); Hutchinson v. Florida, 677 F.3d 1097, 1100 (11th Cir. 2012) (explaining that counsel's misinterpretation of AEDPA does not warrant equitable tolling simply because counsel "ought to have known better"). Goodman was no more acting for an adverse interest in this case than the attorney for Lawrence was in that case.

However much Goodman's negligence harmed Cadet's interests, that negligence and the harm it caused did not occur because Goodman was acting to promote his own or a third party's interests at the expense of Cadet's interests. To disregard that critical fact, as Cadet and the dissent would have us do, would ignore the "essential difference" the Supreme Court emphasized in Maples between an attorney's negligent errors, which are attributable to a client even though harmful, and defaults that occur as a result of extraordinary circumstances such as attorney abandonment or other forms of misconduct, which are not attributable to a client. See Maples, 565 U.S. at 282, 132 S. Ct. at 923.

37

G.

Contrary to Cadet's contention, Goodman's negligence in missing the filing deadline does not mean that he abandoned or effectively abandoned Cadet. Negligence, however gross, is not the same as abandonment.  If it were, there would be no point in Maples' refinement or explication of what Holland said. Abandonment denotes renunciation or withdrawal, or a rejection or desertion of one's responsibilities, a walking away from a relationship.  See Abandon, Black's Law Dictionary (6th ed. 1990) (defining "abandon" as "[t]o give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert"); Abandon, Random House Webster's Unabridged Dictionary (2d ed. 1997) (defining "abandon" as "to leave completely and finally; forsake utterly; desert," or "to give up; discontinue, withdraw from"); Abandon, Webster's New World College Dictionary (3d ed. 1991) (defining "abandon" as "to give up (something) completely or forever" and explaining that it "implies leaving a person or thing, either as a final, necessary measure . . . or as a complete rejection of one's responsibilities, claims, etc."); see also Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004) (equating "abandonment" with "physical disappearance or constructive disappearance") (citations omitted); State v. Bradley, 811 S.W.2d 379, 384 (Mo. 1991) (defining "abandonment" as conduct that amounts to "a total default in carrying out the obligations imposed upon [ ] counsel," not merely ineffective

38

assistance).  We do not mean to suggest that temporary abandonment during a critical period (a situation we do not have before us) would not be enough even if the attorney un-abandons his client after the harm has occurred or can no longer be avoided.  What we mean is that the reason the filing deadline was missed must be because of abandonment or some other extraordinary circumstance, not negligence alone, even gross negligence.

Although attorney Goodman screwed up, as lawyers sometimes do, he did not withdraw from representing Cadet, renounce his role as counsel, utterly shirk all of his professional responsibilities to Cadet, or walk away from their attorney-client relationship.  Unlike the lawyer in Holland, Goodman did not fail to keep his client abreast of key developments in his case, did not fail to respond to his client's inquiries or concerns, and did not sever nearly all communication with his client for a period of years, or even for months, or even for weeks.  See Holland, 560 U.S. at 652, 130 S. Ct. at 2564 (counsel, among other deficiencies, "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, . . . despite Holland's many pleas for that information," and "failed to communicate with his client over a period of years, despite various pleas from Holland that [counsel] respond to his letters"); Maples, 565 U.S. at 282, 132 S. Ct. at 923 (characterizing Holland as a case of abandonment involving "counsel's near-total failure to communicate with petitioner or to respond to

39

petitioner's many inquiries and requests over a period of several years") (quotation marks omitted).  And unlike the two lawyers in Maples, Goodman did not wholly desert, forsake, or abandon his client without notice, thereby ceasing to serve as his agent "in any meaningful sense of that word," 565 U.S. at 287, 132 S. Ct. at 926, and leave him "without any functioning attorney of record," id. at 288, 132 S. Ct. at 927.  Instead, Goodman maintained regular contact with Cadet throughout his state post-conviction proceedings, and discussed the case with him on a number of occasions, and responded to all of his many inquiries and concerns about the federal filing deadline, and sent him copies of the relevant statutory language and state appellate court opinion, and did prepare and eventually file a § 2254 petition on Cadet's behalf.

Although Goodman failed to file that § 2254 petition on time, he did not knowingly disregard Cadet's instructions that he file on time.  Based on his misreading of § 2244(d), Goodman genuinely believed that he had ample time in which to prepare and file a federal habeas petition following the conclusion of Cadet's Rule 3.850 proceedings.  As Justice Alito noted in his Holland concurrence, while articulating the critical distinction that would become the Maples standard, an attorney's miscalculation of the filing deadline, inadvertent failure to file a § 2254 petition on time, or failure "to do the requisite research to determine the applicable deadline" are all types of errors that are "constructively

attributable to the client." Holland, 560 U.S. at 657, 130 S. Ct. at 2567 (Alito, J., concurring); see also Menominee Indian Tribe, 136 S. Ct. at 756–57 (mistaken reading of precedent is a garden variety error that does not justify equitable tolling).

Goodman's negligent misreading of § 2244(d)(1)(A) is the kind of attorney error regarding the § 2244(d) statute of limitations provisions that the Supreme Court, this Court, and other courts have held does not qualify as an extraordinary circumstance warranting equitable tolling. See Lawrence, 549 U.S. at 336–37, 127 S. Ct. at 1085 (explaining that to hold otherwise "would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling"); Steed, 219 F.3d at 1300 ("Any miscalculation or misinterpretation by Steed's attorney in interpreting the plain language of [§ 2244(d)] does not constitute an extraordinary circumstance sufficient to warrant equitable tolling."); Johnson v. Hendricks, 314 F.3d 159, 162–63 (3d Cir. 2002) (equitable tolling not warranted where the petitioner detrimentally relied on counsel's erroneous advice that under § 2244(d) he had one year from the conclusion of his state post-conviction proceedings to file a § 2254 petition); Harris v. Hutchinson, 209 F.3d 325, 331 (4th Cir. 2000) (counsel's misinterpretation of the "unambiguously" clear § 2244(d)(1) provision did not constitute an extraordinary circumstance); Taliani v. Chrans, 189 F.3d 597,

41

597–98 (7th Cir. 1999) (concluding that "under no tenable view of the doctrine [of equitable tolling] did the lawyer's mistake" in calculating the filing deadline because of inadequate research into § 2244(d)(1) warrant tolling). Those decisions all preceded the Holland and Maples decisions, but they are not inconsistent with either one.

When Cadet repeatedly expressed concern and informed Goodman that jailhouse lawyers had calculated his filing deadline differently, Goodman stubbornly but in good faith adhered to his misreading of the statutory provision. Stubborn negligence is still negligence. Persisting in a mistaken reading of a statutory provision without checking further after being told that incarcerated criminals without law degrees have questioned that reading is not abandonment or other attorney misconduct.[7] At most, it might be enough to raise the degree of a lawyer's negligence from simple to gross. But that difference is still one of degree, while the difference between any degree of negligence and attorney misconduct or other extraordinary circumstance is one of kind.

---

[7] The dissent seeks support for its position with our decision in Downs v. McNeil, 520 F.3d 1311, 1322 (11th Cir. 2008), where the professional misconduct involved "counsel's overt deception in representing [to the petitioner that] they had filed a tolling petition in state court when they had not in fact done so." See Dissenting Opn. at 64–65. The Downs decision lends no support to the dissent. No one has ever suggested that Goodman lied to Cadet about having filed a tolling petition or about anything else.

42

H.

We do not wish to be misunderstood.  All that we have before us in this case, and all that we decide, is the question of whether negligence, even gross negligence, alone is enough to meet the extraordinary circumstance requirement for equitable tolling in a habeas case.  We hold that it is not.  More is required, and that more may be abandonment.  We certainly do not hold, or in any way mean to imply, that abandonment is the only circumstance that can meet the extraordinary circumstance element for equitable tolling, although some courts have misinterpreted our previous opinion in this case to mean that.  See Luna v. Kernan, 784 F.3d 640, 647–48 (9th Cir. 2015).[8]  Abandonment is an extraordinary circumstance that can, when coupled with reasonable diligence by the petitioner, justify equitable tolling, but attorney negligence or gross negligence, by themselves, are not.

Circumstances other than abandonment can meet the extraordinary circumstance element for equitable tolling.  Among them are our pre-Holland

---

[8] We said in Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1210 n.10 (11th Cir. 2014), that "[i]n [Cadet] . . . , we held that the proper standard for gauging whether attorney misconduct qualifies as an extraordinary circumstance for equitable tolling purposes is whether it amounts to abandonment of the attorney-client relationship, not whether it is negligence or even gross negligence."  That sentence could have been more carefully written but the distinction it draws is between abandonment on the one hand and negligence or gross negligence on the other.  It does not state that abandonment is the only extraordinary circumstance.  And, in any event, the statement is pure dicta.  See id. (stating that because the petitioner had not met the due diligence or causal connection requirements for equitable tolling, "we need not address Cadet's application to this case or decide whether counsel's alleged errors rose to the level of abandonment").

43

circumstances of bad faith, dishonesty, divided loyalty, and mental impairment.

See Thomas v. Att'y Gen., 795 F.3d 1286, 1292–94 (11th Cir. 2015) (explaining

that the Supreme Court in Holland implied that those circumstances would be

sufficient).  Those circumstances can be sufficient if there is a causal link, but we

recognize that they most definitely are not the only ones that can suffice.  See

Holland, 560 U.S. at 651, 130 S. Ct. at 2563 ("[A]t least sometimes, professional

misconduct that fails to meet the Eleventh Circuit's standard could nonetheless

amount to egregious behavior and create an extraordinary circumstance that

warrants equitable tolling."); id. at 652, 130 S. Ct. at 2564 ("[S]uch [extraordinary]

circumstances are not limited to those . . . ."); see also Hunter v. Ferrell, 587 F.3d

1304, 1309–10 (11th Cir. 2009) (holding that mental retardation that affects a pro

se petitioner's ability to file a habeas petition on time will justify equitable tolling).

Other extraordinary circumstances that justify equitable tolling, including

other instances of attorney misconduct, can be identified as they arise in future

cases.[9]  We recognize that, and also recognize that our decision in Holland was

_____

[9] The decision and opinion in the Thomas case are not inconsistent with what we hold
and say here.  Thomas recognized, as we do, that equitable tolling is available for "serious
instances of attorney misconduct."  795 F.3d at 1291 (quoting Christeson, 135 S. Ct. at 894).  It
also recognized, as we do, that our pre-Holland circumstances of "bad faith, dishonesty, divided
loyalty, [and] mental impairment" still qualify "as extraordinary circumstances" that can support
a claim to equitable tolling.  Id. at 1292, 1294.  That assumes, of course, a causal connection
between one of those circumstances and the failure to file on time.  Absent a causal connection,
tolling would not be available, which is why the Thomas opinion says that the named
circumstances "may still serve as extraordinary circumstances," id. at 1292, for tolling purposes;

44

overturned by the Supreme Court in that case, even though the dissent in this case refuses to recognize that we do recognize it. Despite our earnest desire not to be misunderstood, the dissent misunderstands our decision, stating more than a dozen times that we are reinstating this circuit's pre-Holland rule, that we are construing Maples as having implicitly overruled Holland, that we are discrediting Holland, that we are defying Holland, and on and on. We aren't.

Our holding, as explained and limited in the text of this opinion, explicitly recognizes and follows Holland and other Supreme Court decisions. What the dissent does not recognize is that neither Holland nor any other Supreme Court decision holds that negligence or gross negligence standing alone is enough to justify equitable tolling. The dissent also fails to recognize the clear meaning of the plain words that the Supreme Court used in Maples to explain its decision in Holland — not to overrule it, not to cut back on it, not to undermine it, but to construe and explain it.

---

they will serve to toll if they existed and caused the late filing, see id. at 1295 (explaining that mental impairment can serve as an extraordinary circumstance "at least where the petitioner is able to show that it affected his lawyer's work").

Finally, the Thomas opinion recognizes, as we do, that where there is no abandonment the question is "whether [the attorney's] conduct otherwise amounted to serious misconduct that constitutes an extraordinary circumstance." Id. at 1297. In other words, serious attorney misconduct that can serve to toll the habeas statute of limitations is not limited to abandonment, or to the circumstances we listed in our Holland decision before the Supreme Court's Holland decision.

What we hold today, and all that we hold, is that an attorney's negligence, even gross negligence, or misunderstanding about the law is not by itself a serious instance of attorney misconduct for equitable tolling purposes, even though it does violate the ABA model rules as all, or virtually all, attorney negligence does. See Luna, 784 F.3d at 647 (explaining why negligently miscalculating a filing deadline alone is not and cannot be a sufficient basis for finding attorney misconduct for tolling purposes). Because Cadet has shown, at most, that his failure to meet the filing deadline was the product of his attorney's good faith but negligent or grossly negligent misunderstanding of the law, the district court properly dismissed the habeas petition as untimely.

**AFFIRMED.**

WILSON, Circuit Judge, dissenting:

Attorney Michael Steven Goodman caused Earnest Cadet to be late in filing a federal habeas petition, and Cadet asks for extra time to file his petition. The Supreme Court instructs us that, in determining whether to grant extra time to file a federal habeas petition, we must avoid the imposition of a mechanical rule and consider on a case-by-case basis any attorney misconduct that exceeds garden-variety negligence. Goodman's misconduct exceeded garden-variety negligence and compels a case-specific inquiry into whether we should grant Cadet extra time to file a federal habeas petition. Disregarding the Supreme Court's instruction, the Majority imposes a mechanical rule and denies Cadet this case-specific inquiry. First the Majority imposes the rule that attorney negligence, even gross negligence, alone can never justify granting extra time to file a federal habeas petition. Then the Majority declares that Goodman's misconduct constituted negligence and denies Cadet the extra time.

I welcome the Majority's revisions, including the clarification that an attorney's abandonment of a client is not the only reason for equitably tolling the limitations period for a federal habeas petition.[1] However, I cannot join the

---

[1] Approximately one hundred opinions and report and recommendations have cited this panel's initial opinion, many for the proposition that only abandonment merits equitably tolling the limitations period for a federal habeas petition. *See, e.g., Gillman v. Sec'y, Fla. Dep't of Corr.*, 576 F. App'x 940, 943 n.7 (11th Cir. 2014) (per curiam) (Carnes, C.J., Tjoflat, Jordan, J.J.) ("[*Cadet*] held that the correct standard for determining whether attorney misconduct

47

Majority in concluding—in defiance of *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549 (2010)—that attorney negligence alone can never justify equitably tolling the limitations period. And I cannot join the Majority in ultimately declining to equitably toll the limitations period for Cadet. I respectfully dissent.

## I

I cannot join the Majority's opinion that attorney negligence alone can never justify equitably tolling the limitations period. The Majority's opinion is not this circuit's first attempt to promulgate this rule: in 2008, we announced the same in *Holland v. Florida*, 539 F.3d 1334 (11th Cir. 2008) (per curiam). Rejecting the rule, the Supreme Court stated:

> In the Court of Appeals' view, . . . [an] attorney's unprofessional conduct, . . . even if it is "negligent" or "grossly negligent," cannot . . . warrant equitable tolling unless the petitioner offers "proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth." In our view, this standard is too rigid. We therefore reverse the judgment of the Court of Appeals and remand for further proceedings.

*Holland*, 560 U.S. at 634–35, 130 S. Ct. at 2554 (citations omitted). Rather than accept the Supreme Court's judgment, the Majority pronounces this rule once again.

---

qualifies as an extraordinary circumstance for equitable tolling purposes is whether the conduct amounts to abandonment of the attorney-client relationship."); *Moore v. Jones*, No. 3:14-cv-484 (N.D. Fla. Mar. 17, 2016) (adopting a report and recommendation that states, "[A]bandonment of the attorney-client relationship is required").

The Majority quibbles with the *Holland* majority and applauds and adopts the *Holland* concurrence that agreed in part with this circuit's *Holland* decision.  In order to justify adopting a concurrence over the Supreme Court's controlling opinion, the Majority relies on a citation to the *Holland* concurrence in *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912 (2012), a subsequent Supreme Court decision.  The Majority concludes that *Maples*, by citing the *Holland* concurrence, implicitly overruled the *Holland* majority.  In other words, the Majority declares that this circuit's holding in *Holland* was right all along.

The Majority's holding contravenes the Supreme Court's instruction against construing one of its opinions as "implicitly overrul[ing]" a previous opinion.  *See Bosse v. Oklahoma*, 580 U.S. ___, 137 S. Ct. 1, 2 (2016) (per curiam); *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1263 (11th Cir. 2012) (Carnes, C.J.) ("The Supreme Court has not always been consistent in its decisions or in its instructions to lower courts.  There are, however, some things the Court has been perfectly consistent about, and one of them is that it is that Court's prerogative alone to overrule one of its precedents.").  Further, *Maples* did not adopt the portion of the *Holland* concurrence discussing the tolling effect of negligence.  *Maples* cited favorably Section II of the *Holland* concurrence; Section I discussed negligence.  Specifically, *Maples* cited Section II for guidance on how to

49

determine whether an attorney "abandoned" a client, an issue for which there was limited guidance.

The *Holland* majority and the *Maples* majority comprised the same six Justices.  Interpreting *Maples* as implicitly overruling *Holland*, the Majority claims that the six Justices about-faced in *Maples*, a case that was decided a mere 19 months after *Holland*.

**A. *Holland* reversed this circuit's rule that attorney negligence, even gross negligence, alone can never equitably toll the limitations period.**

Under 28 U.S.C. § 2244(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), a state prisoner has a year after final judgment, among other enumerated dates, to petition for federal habeas relief.  The prisoner is entitled to equitable tolling of this limitations period if he can establish "(1) that he has been pursuing his rights diligently[] and (2) that some extraordinary circumstance stood in his way . . . ."  *Holland*, 560 U.S. at 649, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005)).  The issue in *Holland* and here is whether the misconduct of a prisoner's attorney constitutes an "extraordinary circumstance" that merits equitably tolling the limitations period.

In *Holland*, the prisoner's attorney communicated with the prisoner only three times over three years, and "each time by letter."  *Id.* at 636, 130 S. Ct. at 2555.  This circuit held that the attorney's misconduct constituted at most gross

50

negligence and declared that attorney negligence alone can never constitute an

extraordinary circumstance:

> [I]n our view, no allegation of lawyer negligence or of failure to meet a lawyer's standard of care—in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part—can rise to the level of egregious attorney misconduct that would entitle [the prisoner] to equitable tolling. Pure professional negligence is not enough.

*Holland*, 539 F.3d at 1339.

The Supreme Court reversed this rejection of negligence as a ground for

equitable tolling and remanded for further proceedings.  Emphasizing that the

prisoner's case presented a question of equity, the Court instructed that—in

determining whether to equitably toll based on any attorney misconduct other than

garden-variety negligence[2]—we must consider the misconduct on a "case-by-case

basis" and avoid imposing "mechanical rules":

> In emphasizing the need for flexibility, for avoiding mechanical rules, we have followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity.  The flexibility inherent in equitable procedure enables courts to meet

---

[2] *Holland* recognized that in previous cases the Supreme Court had held that a "garden variety claim of excusable neglect" could not merit equitable tolling.  *See Holland*, 560 U.S. at 633, 130 S. Ct. at 2553 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990)).  For brevity's sake, the Dissent addresses a "garden variety claim of excusable neglect" as "garden-variety negligence."

new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices.

*Holland*, 560 U.S. at 650, 130 S. Ct. at 2563 (citations omitted).[3]

Despite this instruction, the Majority resurrects this circuit's overruled *Holland* holding and reinstates the mechanical rule that attorney negligence, even gross negligence, alone can never equitably toll the limitations period for a federal habeas petition:

> [We] hold[] that attorney negligence, even gross or egregious negligence, does not by itself qualify as an "extraordinary circumstance" for purposes of equitable tolling . . . .

*See* Maj. Op. at 23, 39, 43, 46.[4]

Like *Holland*, this appeal hinges on a question of equity. Cadet requests, based on Goodman's misconduct, equitable tolling of the limitations period for a

---

[3] The *Holland* majority ruled against the imposition of a mechanical rule and never condoned the categorization of certain attorney misconduct as "gross negligence." The *Holland* majority used the phrase only to describe this circuit's holding in that case. *See* 560 U.S. at 634, 644, 649, 130 S. Ct. at 2554 2559, 2563. Only the *Holland* concurrence adopted gross negligence as a category of attorney misconduct. *See id.* at 657, 130 S. Ct. at 2567 (Alito, J., concurring). In accord with the *Holland* majority, the Dissent does not recognize gross negligence as a category of attorney misconduct and uses the phrase only in response to the Majority's use.

[4] The Majority argues that its declaration—that attorney negligence alone can never merit equitable tolling—is not a mechanical rule. In support, the Majority states that its opinion "make[s] clear that abandonment, or some other professional misconduct, or some other extraordinary circumstance can be sufficient for equitable tolling." Maj. Op. at 23 n.2. A principal imposes a mechanical rule by prohibiting students from wearing only pants, and no other garments, to school. This rule is still a rule even though the principal likely allows the students to wear the pants with shoes and a top to school.

federal habeas petition. Although Cadet repeatedly inquired about the timing of his federal habeas petition, Goodman failed to research the issue. Yet Goodman repeatedly reassured Cadet that months remained in the limitations period and discouraged Cadet from seeking advice from others. Goodman was incorrect, and Cadet's petition was untimely. Because Goodman's misconduct exceeded garden-variety negligence, Cadet is entitled to a case-specific inquiry—free of categories and other mechanical rules rejected by the Supreme Court—into whether Goodman's misconduct merits equitably tolling the AEDPA limitations period. *See Holland*, 560 U.S. at 650, 130 S. Ct. at 2563. The Majority, in conflict with Supreme Court instruction, denies Cadet this inquiry.[5]

## B. The Majority interprets *Maples* as implicitly overruling *Holland*.

### 1. The Supreme Court prohibits construing one of its opinions as implicitly overruling a previous opinion.

The Majority sends us back to this circuit's pre-*Holland* jurisprudence by interpreting *Maples* as implicitly overruling *Holland* and by reinstating this circuit's reversed *Holland* decision. However, the Supreme Court has stated, "It is

---

[5] The Majority believes that its opinion is consistent with *Holland* because *Holland* never held that "gross negligence alone may be an extraordinary circumstance warranting equitable tolling." Maj. Op. at 22; *see id.* at 15, 20. As the third footnote of this Dissent states, no portion of the *Holland* majority condoned the categorization of certain attorney misconduct as "gross negligence." Rather, *Holland* ruled against the imposition of a mechanical rule. The Majority defies *Holland* because the Majority imposes a mechanical rule—the creation of a category of attorney misconduct that can never constitute an extraordinary circumstance—not because the Majority excludes a category of attorney misconduct that *Holland* acknowledged and included as an extraordinary circumstance.

53

this Court's prerogative alone to overrule one of its precedents," warning against construing one of its opinions as "implicitly overrul[ing]" a previous opinion. *See Bosse*, 137 S. Ct. at 2 (quoting *United States v. Hatter*, 532 U.S. 557, 567, 121 S. Ct. 1782, 1790 (2001)); *Evans*, 699 F.3d at 1263 ("The Supreme Court has not always been consistent in its decisions or in its instructions to lower courts. There are, however, some things the Court has been perfectly consistent about, and one of them is that it is that Court's prerogative alone to overrule one of its precedents."); *id.* ("We must not, to borrow Judge Hand's felicitous words, 'embrace the exhilarating opportunity of anticipating' the overruling of a Supreme Court decision."); *id.* ("The Court has told us, over and over again, to follow any of its decisions that directly applies in a case, even if the reasoning of that decision appears to have been rejected in later decisions and leave to that Court the prerogative of overruling its own decisions.").

Reluctant to declare forthright that *Maples* implicitly overruled *Holland*, the Majority states that *Maples* "construed and clarified" *Holland*; that the former decision must be read "in light of" the latter decision; that the latter decision "reached back to" the former decision's concurrence; and that the former decision's concurrence "set the template" for the latter decision. *See* Maj. Op. at 15, 21, 23. Each phrase is no more than a euphemism for implicit overrule. The Majority all but declares that *Maples* implicitly overruled *Holland*, which

54

instructed us to avoid the imposition of a mechanical rule and to grant relief on a case-by-case basis. *See Holland*, 560 U.S. at 650, 130 S. Ct. at 2563. According to the Majority, *Maples* declared that attorney negligence alone can never merit equitably tolling the limitations period. In other words, the Majority believes that *Maples* imposed a mechanical rule, which the Majority now adopts to conclude that the type of misconduct that Goodman committed can never equitably toll the limitations period.

The Majority interprets *Maples* as implicitly overruling *Holland*. This interpretation contravenes the Supreme Court's instruction against construing one of its opinions as "implicitly overrul[ing]" a previous opinion. *See Bosse*, 137 S. Ct. at 2; *Evans*, 699 F.3d at 1263.

> 2. *The Majority's interpretation of* Maples *as implicitly overruling* Holland *is baseless.*

The Majority's interpretation of *Maples* as implicitly overruling *Holland* relies solely on *Maples*'s citation of the *Holland* concurrence. However, *Maples* does not embrace the portion of the *Holland* concurrence at odds with the *Holland* majority; *Maples* supports its decision with a section of the concurrence that does not discuss negligence.

Justice Alito's concurrence comprised two clearly delineated sections: the first section discussed negligence, and the second did not. Merely summarizing Section I in order to introduce Section II, *Maples* focused on Section II, which

55

entertained a prisoner's argument that his attorney "essentially abandoned him." *See Holland*, 560 U.S. at 659–60, 130 S. Ct. at 2568. Likewise, *Maples* involved a prisoner's argument that his attorney "abandoned" him. *See Maples*, 565 U.S. at 282, 132 S. Ct. at 923. Because discussion of an attorney's "abandonment" of a client was sparse in case law, *Maples* found the *Holland* concurrence to be "instructive." *See id.* at 281, 132 S. Ct. at 923.

Even with Section II, *Maples* used the section at most as a reference. Although *Maples* "agree[d]" with the *Holland* concurrence's application of agency law, *Maples* did not elevate the *Holland* concurrence to controlling law. *See id.* at 283, 132 S. Ct. at 924. In other words, *Maples*'s citation of the *Holland* concurrence is about as significant as the Majority's citation of dictionaries in defining "abandonment." *See* Maj. Op. at 38. The *Holland* concurrence is as much controlling law as these dictionaries: not at all. No support exists for the Majority's position that, "[i]n the course of explaining its *Holland* decision, the *Maples* Court reached back to Justice Alito's concurring opinion in *Holland*, and adopted his distinction . . . between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." *See id.* at 21–22 (citing *Maples*, 565 U.S. at 282, 132 S. Ct. at 923).

56

The Majority's primary argument for *Maples*'s elevating Section I to controlling law is the phrase "essential difference" in *Maples*'s summary of the concurrence:

> In a concurring opinion in *Holland*, Justice Alito homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client.

*Maples*, 565 U.S. at 282, 132 S. Ct. at 923.  The Majority believes that the phrase "essential difference" implies that *Maples* not only adopted the *Holland* concurrence's distinction between "attorney error" and "essential abandonment" but also rejected attorney error as a ground for equitable tolling.  *See* Maj. Op. at 18, 22, 37.  "'Essential difference' means 'essential difference,'" says the Majority.  *Id.* at 22.

The Majority's wishful reading of *Maples* is refuted by *Maples*'s subsequently identifying the portion of the *Holland* concurrence from which it extracts value:

> We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him.

*See Maples*, 565 U.S. at 283, 132 S. Ct. at 924.  If *Maples* wished to adopt Section I's distinction between "attorney error" and "essential abandonment" and to reject attorney error as a ground for equitable tolling, it would have said so.  The Majority's interpretation of *Maples* as implicitly overruling *Holland* is baseless.

57

**C. Reinstating this circuit's reversed rule, the Majority weighs in on an issue that divided, and was resolved by, the *Holland* Court.**

The Majority reinstates the mechanical rule that negligence, even gross negligence, alone can never equitably toll the limitations period. Attempting to justify this rule, the Majority quibbles with *Holland*'s instruction against the imposition of a mechanical rule and states, "In *Holland* itself the Court reaffirmed its own 'rigid' or 'mechanical' rule that simple or garden variety negligence alone can never warrant equitable tolling." *See* Maj. Op. at 24. While criticizing the *Holland* majority, the Majority applauds and adopts the *Holland* concurrence, which stated that distinguishing garden-variety negligence from other types of negligence was impractical and recommended a standard prohibiting negligence from equitably tolling the limitations period. The Majority continually cites as authoritative *Maples*'s summary of Justice Alito's concurrence: "In a concurring opinion in *Holland*, Justice Alito homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." *See Maples*, 565 U.S. at 282, 132 S. Ct. at 923; Maj. Op. at 18, 22, 37.

Put another way, the Majority weighs in on an issue that divided, and was resolved by, the *Holland* Court: the need for a standard governing the tolling effect of attorney misconduct other than garden-variety negligence. *Compare Holland*, 560 U.S. at 649–50, 130 S. Ct. at 2563 ("[T]he exercise of a court's equity powers

58

must be made on a case-by-case basis."), *with id.* at 657–58, 130 S. Ct. at 2567 (Alito, J., concurring) ("Allowing equitable tolling in cases involving *gross* rather than *ordinary* attorney negligence would . . . be impractical in the extreme."), *id.* at 671, 130 S. Ct. at 2575 (Scalia, J., dissenting) (criticizing the *Holland* majority's "refusal to articulate an intelligible rule"), *and* Maj. Op. at 25 ("[T]he inquiry should not be a standardless, by-the-seat-of-the-pants, length-of-the-chancellor's-foot, purely discretionary decision."). As a court of appeals, we cannot take sides on an issue on which the Court has already ruled. We must adopt, rather than dispute, the Court's controlling opinion and cannot favor over the Court's majority ruling a contradicting concurrence that failed to win the majority vote. As the *Holland* Court instructs, we must evaluate attorney misconduct other than garden-variety negligence on a case-by-case basis to determine whether the misconduct merits equitably tolling a federal habeas petitioner's limitations period.

## II

Denying Cadet equitable tolling, the Majority errs not only in declaring that an attorney's negligence alone can never merit equitable tolling but also in relying, to an unjustified extent, on agency law. The correct examination is free of categories and other mechanical rules and uses, among other things, this circuit's case law, agency law, and professional responsibility principles. This examination reveals that Cadet is entitled to equitable tolling of the AEDPA limitations period.

59

**A. The Majority relies to an unjustified extent on agency law.**

As stated before, a prisoner is entitled to equitable tolling of the AEDPA limitations period if he can establish "(1) that he has been pursuing his rights diligently[] and (2) that some extraordinary circumstance stood in his way . . . ." *Holland*, 560 U.S. at 649, 130 S. Ct. at 2562.  The issue here is whether Goodman's misconduct constitutes an extraordinary circumstance that merits equitably tolling Cadet's limitations period.  Considering whether Goodman's misconduct constitutes an extraordinary circumstance, the Majority relies to an unjustified extent on agency law.[6]  The Majority concludes that no extraordinary circumstance exists after it determines that Goodman never severed the agency relationship and that Goodman's missing the limitations deadline was attributable to Cadet, the principal.  The Majority treats agency law as dispositive.

The Majority offers two justifications for this dependency on agency law. First, the Majority cites *Maples*'s use of "well-settled principles of agency law." *See* Maj. Op. at 27 n.4 (citing *Maples*, 565 U.S. at 280–81, 132 S. Ct. at 922). However, *Maples*'s use of agency law was limited to entertaining a prisoner's

---

[6] The only other reasoning that the Majority offers is dictionary definitions of the word "abandonment," a word that was first uttered by the prisoners in *Holland* and *Maples*.  Often used as a method of interpreting "statutes, . . . constitutional provisions[,] and administrative codes," dictionary definitions are rejected by many even in interpreting statutes. *See* Note, *Looking It up: Dictionaries and Statutory Interpretation*, 107 Harv. L. Rev. 1437, 1437–39 (1994).  Using dictionary definitions to understand a litigant's claim and a Supreme Court opinion is less justified than using dictionary definitions to understand statutory text.

argument that his attorney "abandoned" him. *See Maples*, 565 U.S. at 271, 132 S. Ct. at 917. The Majority's application of agency law—as the primary method of determining the existence of an extraordinary circumstance—reaches far beyond *Maples*'s guidance. Justice Scalia in his *Holland* dissent criticized the majority for "importing into equity" the standard of another area of law. *See Holland*, 560 U.S. at 670–71, 130 S. Ct. at 2575 (Scalia, J., dissenting). The Majority here goes beyond importing agency law into equity: it replaces equity with agency law.

Second, the Majority depends on agency law under the false assumption that the only issue on appeal is whether Goodman abandoned Cadet. The Majority states, "Abandonment is not the only professional misconduct or other extraordinary circumstance that will suffice for equitable tolling, but it is the only one besides negligence that Cadet has argued." Maj. Op. at 26; *see id.* at 26 n.3. Not so. Summarizing his argument, Cadet frames the issue on appeal broadly:

> Mr. Goodman's hallow reassurances to Mr. Cadet that he would timely file a federal habeas petition in response to Mr. Cadet's repeated requests that he do so, and his failure to undertake necessary research to determine the correct filing date despite Mr. Cadet's repeated questioning of the calculation of the filing deadline constitute "extraordinary circumstances" warranting equitable tolling of the limitations period.

Appellant's Br. at 15; *see id.* at 16, 23 ("Accordingly, Mr. Cadet has demonstrated 'extraordinary circumstances' sufficient to warrant equitable tolling.").

61

Although Cadet argues extensively that Goodman abandoned him, he does so because the district court incorrectly held that, "in order to rise to the level necessary to constitute an 'extraordinary circumstance' . . . attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." *Cadet v. Fla., Dep't of Corr.*, No. 9:07-cv-80758, at 70 (S.D. Fla. Aug. 1, 2012). Instead of correcting the district court, the Majority believes that Cadet narrowed the standard with which the Majority can determine whether an extraordinary circumstance exists. This appeal is about whether Goodman's misconduct constituted an extraordinary circumstance. The Majority cannot fault Cadet for the district court's misstatement of the standard and cannot justify limiting this appeal to whether Goodman abandoned Cadet.

Agency law is not the be-all and end-all for this question of equity. *See Downs v. McNeil*, 520 F.3d 1311, 1321 (11th Cir. 2008) ("The rule that a petitioner must always bear the consequences of his attorney's misconduct is unequivocal—yet bright-line rules do not govern the court's exercise of its equitable powers."). We can consider agency law at most as a factor in determining whether an attorney's misconduct constitutes an extraordinary circumstance.[7]

---

[7] The Majority views as contradictory the Dissent's rejecting agency law as dispositive yet considering agency law as a factor. *See* Maj. Op. at 27 n.4. But using factors to help apply an undefined standard to the particulars of a case is logically sound and commonplace. For example, a federal court deciding whether to transfer a case to another venue must determine whether the transfer is "[f]or the convenience of parties and witnesses" and "in the interest of

62

**B. Goodman's misconduct compels a case-specific inquiry.**

*Holland* held that any attorney misconduct that exceeds garden-variety negligence compels a case-specific inquiry into whether equitable tolling is warranted. *See Holland*, 560 U.S. at 650–51, 130 S. Ct. at 2563. Goodman's misconduct exceeded garden-variety negligence. And a case-specific inquiry reveals that Goodman's misconduct merits equitably tolling the AEDPA limitations period for Cadet.

*1. Goodman's misconduct exceeded garden-variety negligence.*

Goodman's misconduct involved a miscalculation of the limitations period, an example of garden-variety negligence. *See id.* at 651–52, 130 S. Ct. at 2654 (citing *Lawrence*, 549 U.S. at 336, 127 S. Ct. at 1085). However, the misconduct at issue here comprised not only Goodman's miscalculation but also (1) Goodman's staunchly refusing, despite repeated inquiries from Cadet, to research how to calculate the limitations period; (2) Goodman's repeatedly offering empty reassurances to Cadet that he, the "real lawyer," had correctly calculated the limitations period; and (3) Goodman's discouraging Cadet from

---

justice." *See* 28 U.S.C. § 1404(a). Neither standard is defined in § 1404(a). Courts have since accumulated factors that courts can consider before deciding whether to transfer, factors such as "the relative means of the parties" and "a forum's familiarity with the governing law." *See, e.g.*, *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). No one standard is dispositive in determining whether the transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice." *See* § 1404(a).

seeking a second opinion, even if from a "jailhouse lawyer." As Goodman

recounted at an evidentiary hearing:

> I convinced [Cadet], literally sat on the phone and
> convinced him. Like I said, I can still hear [Cadet
> saying] in my head, are you sure? Are you sure? Are
> you sure? I remember that particular conversation and I
> talked him out of it. I left him in a position where here's
> a person from Haiti who—who lost his life in a
> fundamentally unfair way at trial, having to choose
> between the jailhouse lawyers that he's locked up with
> and my advice. He chose my advice which, I admit in
> open court, was wrong.

Transcript of Evidentiary Hearing at 29, *Cadet v. Fla. Dep't of Corr.*, No. 9:07-cv-

80758 (S.D. Fla. July 15, 2012). Goodman's misconduct exceeded garden-variety

negligence.

### 2. *A case-specific examination reveals that Cadet is entitled to equitable tolling.*

Goodman's misconduct compels a case-specific examination, free of

categories and other mechanical rules rejected by the Supreme Court, of whether

Cadet is entitled to equitable tolling. *See Holland*, 560 U.S. at 650, 130 S. Ct.

at 2563. A case-specific examination of this circuit's case law, agency law, and

professional responsibility principles reveals that Goodman's misconduct merits

equitable tolling.

First, this circuit's case law strongly favors equitably tolling the limitations

period. *Holland* instructed us to resolve questions of equity on a "case-by-case

64

basis" but "in light of . . . precedent." *Id.* *Downs* involved allegations similar to the facts here. The allegations included:

> [Downs's] unequivocal, repeated demands that his attorneys file his habeas petition; his close tracking of his attorneys' work and the applicable federal deadlines; and his counsel's overt deception in representing they had filed a tolling petition in state court when they had not in fact done so, thereby depriving him of several months of his statutorily-guaranteed one-year federal limitations period.

*Downs*, 520 F.3d at 1322. Although Downs's attorneys filed his state habeas petition before expiration of the federal habeas limitations period, we still concluded that the one day in which to petition for federal habeas relief after the conclusion of his state habeas petition "put [Downs, a prisoner,] in an untenable position." *Id.* We held that, "[a]ssuming Downs'[s] allegations are true, he has shown the existence of extraordinary circumstances." *Id.* at 1323.

*Downs* focused on the contrast between Downs's "persistence" and his attorneys' "deceit and delay." *Id.* at 1322. Such contrast exists here. Cadet unequivocally and repeatedly demanded that Goodman verify the correct limitations period; sought help from "jailhouse lawyers"; and was deceived by Goodman into believing that Goodman, the "real lawyer," had superior knowledge of the limitations period than either Cadet or the jailhouse lawyers. This circuit's case law strongly favors equitably tolling the limitations period.

65

Second, principles of agency law strongly favor equitably tolling the

AEDPA limitations period for Cadet. The Third Restatement of Agency states:

> [N]otice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person.

Restatement (Third) Of Agency § 5.04 (2006); *see also* Restatement (Second) Of

Agency § 112 (1958). Goodman acted adversely to Cadet's interest by refusing to

research the tolling issue, by offering false advice to Cadet, and by discouraging

Cadet from seeking advice from jailhouse lawyers. Thus the correct limitations

period—which the agent, Goodman, had "reason to know"—"is not imputed to the

principal," Cadet. *See* Restatement (Third) Of Agency § 5.04.

Concluding that knowledge about the correct limitations period is imputed to

Cadet, the Majority does not dispute that the Goodman had reason to know about

the correct limitations period and that Goodman acted adversely to Cadet. Instead,

the Majority argues that Cadet failed to establish that Goodman's misconduct was

"for the purpose of advancing his own interests or those of another person." *See*

Maj. Op. at 28. However, imposing this burden, the Majority resorts to sources

that speak to general principles of agency law rather than those discussing an

attorney's relationship with his client. This is because no burden exists for a client

66

to establish an attorney's selfish motive, which is assumed in the application of agency law to a lawyer-client relationship.[8]

Indeed, the cases that the Majority cites so dearly in order to apply agency law—*Maples*, *Coleman*, and *Downs*—contain no discussion of the offending attorney's motive. *See generally Maples*, 565 U.S. 266, 132 S. Ct. 912; *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546 (1991); *Downs*, 520 F.3d 1311. The cases offer no reason for the omission and appear to assume, based on the particular facts of a case, that an attorney receives monetary or other benefit either by retaining the client at issue or by gaining other clients.[9] The former assumption is true here. Goodman was able to retain Cadet as a client by advising Cadet without any research and by constantly reassuring Cadet that Goodman possessed superior knowledge. Goodman's failure is not imputed to Cadet. The Majority's requiring Cadet to establish further Goodman's selfish motive, perhaps with a fee agreement or goodwill Goodman gained for his pro bono work, is imposing on

---

[8] The Majority cites a case that might conceivably support the imposition of this burden. *See* Maj. Op. at 30. However, the case—from another circuit—stated only that the client "does not argue, and the record does not suggest, that [the attorney] permitted any interest or consideration to interfere with his loyalty to" the client. *See Towery v. Ryan*, 673 F.3d 933, 942 (9th Cir. 2012). Even that case fails to evince a burden on a client to establish an attorney's selfish motive, especially one that is readily inferred from the record.

[9] After imposing a novel burden—that a client must establish an attorney's selfish motive—the Majority tasks the Dissent with proving the absence of this burden in other cases. Rather than entertaining this farcical request for the Dissent to prove a negative, the Dissent considers the reason for the omission. In other words, the Dissent considers why these cases might have chosen not to impose this burden.

67

Cadet a novel burden unfounded in any case involving the application of agency law to a lawyer-client relationship.[10]

Because Goodman had reason to know about the correct limitations period and because Goodman acted adversely to Cadet, agency law strongly favors equitably tolling the limitations period.

Finally, fundamental canons of professional responsibility strongly favor equitably tolling the AEDPA limitations period for Cadet. *Holland* considered an attorney's violation of "fundamental canons of professional responsibility" as a factor in determining whether his actions constituted an extraordinary circumstance.[11] *Holland*, 560 U.S. at 652, 130 S. Ct. at 2564. These canons

---

[10] This burden is especially onerous because Goodman is no longer Cadet's attorney. Because of Goodman's misconduct during this appeal—misconduct unrelated to that which resulted in Cadet's untimely federal habeas petition—we have suspended Goodman from practicing before this circuit. *See In re Michael Steven Goodman*, No. 11-1101 (11th Cir. May 13, 2011). The United States District Court for the Southern District of Florida likewise suspended Goodman from practicing before it. *See In re Michael Steven Goodman*, No. 2011-95 (S.D. Fla. Nov. 1, 2011).

Even if the Majority chooses to impose this burden, we should remand this case for additional fact finding. "Ascertaining the motives with which an agent acted is often a fact-intensive exercise." Restatement (Third) Of Agency § 5.04 cmt. a.

[11] In his *Holland* dissent, Justice Scalia, while criticizing the majority for "refus[ing] to articulate an intelligible rule" governing equitable tolling, rejected the majority's application of fundamental canons of professional responsibility. *See Holland*, 560 U.S. at 670–71, 130 S. Ct. at 2575 (Scalia, J., dissenting). He discredits this rule because it was proposed "by an ad hoc group of legal-ethicist *amici*" and because of its similarity to *Strickland*'s holding that a defendant's right to counsel assumes the counsel's adherence to "prevailing professional norms." *See id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065 (1984)). In the realm of equity, however, no statutory language guides a court in creating a rule. "Extraordinary circumstance," "abandonment," and "negligence" are each a judicial creation or borrowed from a different area of law. It is within a court's power to borrow from the wisdom of amici and of other areas of law to determine a question of equity. Although not dispositive,

included "perform[ing] reasonably competent legal work" and "communicat[ing] with . . . clients." *Id.*

Goodman failed "to perform reasonably competent legal work." *See id.*; ABA Model Rules of Prof'l Conduct r. 1.1. Despite never having filed a federal habeas petition after representation in state post-conviction proceedings, Goodman failed to perform any research on the AEDPA limitations period. Only after Florida argued that Cadet's federal habeas petition was time-barred did Goodman log onto Westlaw for the first time to research how to calculate the limitations period. *See* Tr. of Evid. Hr'g at 18–19. And despite this lack of experience and knowledge, Goodman repeatedly advised Cadet on the limitations period.

Also, Goodman failed to communicate meaningfully with Cadet. *See Holland*, 560 U.S. at 652, 130 S. Ct. at 2564; Model Rules r. 1.2 cmt. 2 (advising that, if a lawyer and a client disagree about "the means to be used to accomplish the client's objectives," the lawyer "consult with the client and seek a mutually acceptable resolution of the disagreement"). Although Cadet repeatedly voiced concern that he would lose the opportunity to petition in federal court, Goodman flippantly disregarded Cadet's justifiable anxiety and the contrary advice that Cadet had received. Goodman even went so far as to rebuke Cadet for

---

fundamental canons of professional responsibility guide us in determining whether an attorney's misconduct warrants equitable tolling of the limitations period for a federal habeas petition.

contemplating advice contradicting his own.  Fundamental canons of professional responsibility strongly favor equitably tolling the limitations period.

### III

*Holland* instructed us that, in determining whether to equitably toll the time to file a federal habeas petition, we must avoid imposing a mechanical rule. Disregarding this instruction, the Majority imposes the mechanical rule that attorney negligence alone can never justify equitable tolling.  The Majority's plea not to be misunderstood does not change the fact that its opinion directly contravenes *Holland*.  *See* Maj. Op. at 43 ("We do not wish to be misunderstood."); *id.* at 45 ("Despite our earnest desire not to be misunderstood, the dissent misunderstands our decision . . . .").

The "flexibility inherent in equitable procedure" allows us "to accord all the relief necessary to correct particular injustices."  *Holland*, 560 U.S. at 650, 130 S. Ct. at 2563 (internal quotation marks omitted).  Goodman's deplorable misconduct merits allowing Cadet extra time to file his federal habeas petition. We must grant Cadet this equitable relief.

I respectfully dissent.

70

ORDER

Opinions, containing substantial revisions, having been issued by the Court, the petition for rehearing addressing the original panel opinion has effectively been granted, and the grounds for the petition for rehearing en banc have effectively been mooted. Because new opinions have been issued, the parties are free to file petitions for rehearing and for rehearing en banc addressing this decision of the Court, as explained by the new opinions, if they wish to do so. The time limits in the rules of procedure will run from today's date.[1]

---

[1] The precedential effect of an opinion, whether an initial one or a superseding one on rehearing, begins on the date it is issued, not on the later date that the mandate is issued in the case. 11th Cir. R. 36, I.O.P. 2.